**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| John Sorget,<br><br>Plaintiff<br>v.<br><br>Nye County, et al.,<br><br>Defendants | Case No.: 2:26-cv-00688-JAD-MDC<br><br>**Order Granting in Part Motion to Dismiss and Granting Leave to Amend**<br><br>[ECF No. 13] |

Pro se plaintiff John Sorget sues Nye County, Brian Kunzi, and Joseph McGill for their alleged misuse of law-enforcement databases and their denial of his public-records requests. The defendants move to dismiss, contending that Sorget failed to plausibly state any of his claims. I grant the motion to dismiss in part. Several of Sorget's claims are based on laws that do not create a civil right of action or do not exist in common law. So those claims are dismissed with limited leave to amend to replace those claims with cognizable ones. Sorget's claim under the Freedom of Information Act is dismissed with prejudice, but Sorget may amend to plead a similar claim under Nevada law. Sorget's intentional-infliction-of-emotional-distress and doxxing claims are dismissed with leave to amend to add facts to satisfy necessary elements. And portions of Sorget's First and Fourteenth Amendment claims are also dismissed with leave to amend. Sorget must file a second amended complaint consistent with this order by November 30, 2026.

## Background[1]

John Sorget alleges that on December 11, 2025, he reached out to Nye County Sheriff Joseph McGill to discuss "failures made during a child-abuse investigation involving Sorget's children between 2019–2021."[2] McGill allegedly "admitted failure and helped supply public-records requests, . . . but [he] refused to admit fault in writing for Sorget's use in family court."[3] Sorget told McGill that "he would have to expose [Nye County Sheriff's Office (NCSO)] failures and corruption to show validity on the claims of failure."[4] On January 22, 2026, Sorget "posted to a Facebook group explaining his story with failures and requesting more information from the public on cases that may have ended similarly."[5]

The next day, McGill "used police computer systems to access secure information on Sorget" like his warrant history, whether he is on terrorist watch lists, his concealed weapons status, and his federal criminal history.[6] And when Sorget posted another Facebook post on January 29th "requesting more knowledge about McGill's abuse of power, . . . a slew of threats came in on Facebook . . . from friends and family of NCSO employees and the employees of the bar illegally licensed by McGill."[7] Sorget texted McGill to inform him that "someone at NCSO

---

[1] The facts in this section are taken from Sorget's complaint (ECF No. 12) and are not intended as findings of fact.

[2] ECF No. 12 at ¶ 11 (amended complaint) (cleaned up).

[3] *Id.* at ¶ 12.

[4] *Id.* at ¶ 14.

[5] *Id.* at ¶ 16.

[6] *Id.* at ¶¶ 17–18.

[7] *Id.* at ¶¶ 20–21.

accessed and leaked protected information," and within four minutes of sending that text, "all threats had ceased, further proving NCSO involvement."[8]

Sorget then "opened an investigation for CJIS/NCIC violations" with NCSO.[9] Sorget's friend and NCSO terminal-agency coordinator Ashley Castillo investigated.[10] Sorget wasn't notified of the results of the investigation, prompting him to "file a public-records request for name, inquiries, and NCSO policies."[11] District Attorney (DA) Brian Kunzi told the custodian of records not to answer the request and that his office would take care of it.[12] A couple of months later, Sorget's records request was denied, but the next day "after the threat of litigation against NCSO and the DA they released the documents showing the NCIC violations and a list of policies and procedures."[13] At around this time "a NCSO union attorney and two assistant district attorneys advised Castillo to inform Sorget not to return to Nye County due to the risk of fabricated charges and planted evidence by NCSO due to the agency's history."[14] And the day after NCSO gave Sorget documents related to his public-records request, there was a "public dispute between NCSO personnel" during which McGill admitted that Kunzi "offered him protection" and that he used "CJIS/NCIC systems to access [Sorget's] child-abuse case."[15] And

---

[8] *Id.* at ¶¶ 24–25.

[9] *Id.* at ¶ 26. In their motion to dismiss, the defendants refer to CJIS/NCIC as a federal system by which NCSO can access records. ECF No. 13 at 9. I suspect that those acronyms refer to the FBI's Criminal Justice Information Services (CJIS) and the Department of Justice's National Crime Information Center database, but Sorget does not define them in his amended complaint.

[10] ECF No. 12 at ¶ 27.

[11] *Id.* at ¶ 30 (cleaned up).

[12] *Id.* at ¶ 31.

[13] *Id.* at ¶ 44.

[14] *Id.* at ¶ 47.

[15] *Id.* at ¶¶ 49–51.

NCSO's custodian of records Julie Nicholson "was told to treat Sorget's request[s] differently and direct them all to McGill and Kunzi to review."[16]

Sorget's amended complaint offers 13 claims stemming from these facts: (1) violations of the First Amendment; (2) violations of the equal-protection clause of the Fourteenth Amendment; (3) violations of the Victim's Rights Act, 18 U.S.C. § 3771; (4) intentional infliction of emotional distress (IIED); (5) unauthorized disclosure of information under 26 U.S.C. § 7213; (6)–(9) and (12) are claims for "misconduct"; (10) conspiracy under 18 U.S.C. § 371; (11) violations of the Freedom of Information Act (FOIA); and (13) violations of Nevada's anti-doxxing laws.[17] He names McGill, Kunzi, and Nye County as defendants, but he also attributes several actions to Doe or Roe defendants to fill out his factual allegations. The named defendants move to dismiss his complaint, contending that his facts do not state any claims for relief.[18]

**Discussion**

Federal pleading standards require a complaint to include enough factual detail to "state a claim to relief that is plausible on its face."[19] This "demands more than an unadorned, the-

---

[16] *Id.* at ¶ 52.

[17] *Id.* at ¶¶ 61–127.

[18] The defendants purportedly also move to dismiss on qualified-immunity grounds. *See* ECF No. 13 at 2 (arguing that Sorget's § 1983 claims "are independently barred by qualified immunity"). They include the qualified-immunity standard in their motion, *id.* at 4, but they fail to provide any analysis showing that qualified immunity applies under these facts. In short, they include authorities, but not points, to support that argument. *See* L.R. 7-2(a) (All motions "must be supported by a memorandum of points and authorities."). So I do not consider whether the defendants are entitled to qualified immunity because their motion does not sufficiently brief that issue.

[19] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

defendant-unlawfully-harmed-me accusation";[20] plaintiffs must make direct or inferential factual allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[21] A complaint that fails to meet this standard must be dismissed.[22]

But federal courts must also interpret all pleadings "so as to do justice."[23] And the Supreme Court has consistently held that pro se pleadings are "to be liberally construed."[24] A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief."[25] If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment.[26]

### A. Portions of Sorget's free-speech claim survive, and he is granted leave to amend on other portions.

Sorget alleges that the defendants have attempted to suppress his free-speech rights.[27] He accuses McGill of "illegally gain[ing] access to privileged information and spread[ing] it to others in an attempt to harass, threaten, and coerce [him] into silence" and telling his staff that

---

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[21] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

[22] *Id.* at 570.

[23] Fed. R. Civ. P. 8(e).

[24] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted).

[25] *Id.* (cleaned up).

[26] *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

[27] ECF No. 12 at ¶ 62.

"anything that needs to be done to silence Sorget needs to be done."[28] He also alleges that Kunzi made up reasons to deny his public-records requests "that could be used in conjunction with the First Amendment to possibly expose or cause harm" to McGill and Kunzi's election campaigns.[29] Sorget further says that "NCSO staff, family, and friends abused safeguards within Facebook to have posts removed and used NCSO ties to threaten admins to remove Sorget from the group before" he could post again.[30]

The defendants construe Sorget's free-speech claim as one for retaliation under the First Amendment,[31] and Sorget appears to agree with that characterization.[32] To state a plausible First Amendment retaliation claim, a plaintiff must allege that "(1) he engaged in constitutionally protected activity, (2) the defendant[s'] actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant[s'] conduct."[33]

Liberally construed, Sorget's amended complaint adequately alleges that he engaged in constitutionally protected activity: he wrote Facebook posts about NCSO's alleged mishandling of a child-abuse case and "McGill's abuse of power."[34] He also alleges that, in response, McGill accessed "secure information" about him through federal databases and shared that information

---

[28] *Id.* at ¶¶ 63, 65.

[29] *Id.* at ¶ 64.

[30] *Id.* at ¶ 66.

[31] ECF No. 13 at 5.

[32] ECF No. 16 at 2–3 (Sorget's response, in which he argues that his amended complaint contains facts sufficient to plead a retaliation claim).

[33] *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016)).

[34] ECF No. 12 at ¶¶ 16, 20.

with NCSO staff, who then threatened him on Facebook using information that could only come from McGill's federal source.[35] I also liberally construe Sorget's complaint to suggest that Kunzi recommended denial of his public-records requests in response to his online conduct. I find that Sorget adequately alleges that those actions would chill a reasonable person's speech and that Sorget's speech was the motivating factor behind their conduct.

In Sorget's response, he also contends that "McGill has used threats against [Facebook] group moderators to intimidate and remove posts that were not illegal, threatening, or harassing for the sheer fact that [they] opposed him."[36] Facts supporting that theory do not appear in the amended complaint, Sorget rather alleges that "NCSO staff, family, and friends" were responsible for getting his Facebook posts removed.[37] So Sorget fails to sufficiently connect McGill's actions to those consequences. Because I grant Sorget leave to amend on other claims, I also grant him leave to amend his First Amendment claim if he can allege true facts demonstrating that McGill or any other defendant was responsible for blocking him from Facebook groups or removing his posts.

**B. Sorget has adequately pled a class-of-one equal-protection claim as to his public-records request, but not for the defendants' failure to investigate vague crimes.**

Sorget alleges that McGill and Kunzi "conspired to create a plan to avoid releasing information that could incriminate" an unknown defendant and gave Nicholson "direct instructions to treat legal and protected records requests differently for Sorget specifically."[38] He also avers that an unknown defendant "failed to notify [him] of a breach of information and

---

[35] *Id.* at ¶¶ 21–25.

[36] ECF No. 16 at 3.

[37] ECF No. 12 at ¶ 66.

[38] *Id.* at ¶¶ 69–70.

crimes committed against him," that Kunzi and the DA "refused to prosecute th[ose] crimes," and that McGill, Kunzi, the DA, and NCSO "failed to investigate any claim brought forth except" the investigation prompted by Sorget's allegation of NCIC violations.[39]

Because Sorget does not allege membership in a protected class, his complaint appears to assert a "class-of-one" theory. A plaintiff can establish an equal-protection claim on a class-of-one theory by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[40] "The paradigmatic class-of-one case should be one in which a public official, for some improper motive, comes down hard on a hapless private citizen.[41]

The defendants contend that Sorget's claim fails because he didn't "identify or allege a similarly situated person, i.e., another individual who made public-records requests and was treated more favorably," and his allegations that the defendants conspired with each other are bare legal conclusions that should not be given any weight.[42] But Sorget specifically alleges that the defendants gave Julie Nicholson, NCSO's custodian of records "direct instructions to treat legal and protected record requests differently for Sorget."[43] I find those allegations sufficient to

---

[39] *Id.* at ¶¶ 71–75.

[40] *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

[41] *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 995 (9th Cir. 2007) (cleaned up).

[42] ECF No. 13 at 7.

[43] ECF No. 12 at ¶ 70. Technically, the complaint says that Nicholson "had direct instructions" but it doesn't explicitly say who gave her those instructions. *Id.* However, read liberally and drawing all reasonable inferences from the complaint, the preceding paragraph says that McGill and Kunzi "used Nicholson as a vehicle" to avoid releasing Sorget's requested information, which implies that McGill and Kunzi gave Nicholson instructions to treat Sorget differently. *Id.* at ¶ 69.

demonstrate that Sorget was treated differently than any other person submitting a public-records request, with no rational basis to do so.

The remaining allegations in Sorget's equal-protection claim, however, do not explain how he was treated differently than similarly situated individuals with respect to his claims that Kunzi and McGill failed to prosecute vague "crimes" or investigate Sorget's claims. Those allegations do not identify what would happen to a similarly situated individual under these circumstances, nor do they really explain what the defendants did. So I grant Sorget leave to amend to supplement his equal-protection claim if he can allege adequate facts to support his theories.

**C. Sorget's third, fifth, sixth, seventh, eighth, ninth, tenth, and twelfth claims are dismissed with leave to amend.**

Sorget's third claim is brought under the Victim Rights Act, 18 U.S.C. § 3771. His fifth claim is for the unauthorized disclosure of information under 26 U.S.C. § 7213. And his tenth claim is for conspiracy under 18 U.S.C. § 371. The defendants move to dismiss all three claims because the statutes he relies on do not provide a private, civil right of action.[44] Sorget acknowledges this defect and does not oppose dismissing those claims, and he seeks leave to amend to replace his tenth claim with a similar, cognizable one. So I grant dismissal of those claims and give Sorget leave to amend his conspiracy claim.

Sorget also brings five claims for "misconduct" under common law.[45] The defendants contend that "misconduct" is not a recognized tort in Nevada and even if those claims were construed as ones for negligence, Sorget "failed to identify any duty owed, any breach, or any

---

[44] ECF No. 13 at 8.

[45] ECF No. 12 at ¶¶ 93–99 (claim six), 100–03 (claim seven), 104–07 (claim 8), 108–110 (claim nine), 117–121 (claim twelve).

cognizable damages."[46] Sorget asserts that his misconduct claims were meant to be negligence claims and offers to amend his complaint to make that clear. I grant him leave to do so. Sorget is advised that, to adequately plead a negligence claim, he must allege facts sufficient to show that the defendants owed him a specific duty of care that is recognized by Nevada law, they breached that duty, the breach caused his harm, and damages resulted.[47]

**D. Sorget's IIED claim is dismissed with leave to amend.**

To state a claim for intentional infliction of emotional distress (IIED), a plaintiff must adequately allege (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation."[48] Sorget alleges that McGill "intentionally released information for Sorget to be stalked, harassed, threatened, and live in fear of retaliation" and describes McGill and Kunzi's actions as "mental warfare."[49] The defendants move to dismiss, contending that the acts alleged "may be frustrating to [Sorget], but is not remotely 'outside all possible bounds of decency.'"[50] They also insist that Sorget must allege a "physical manifestation of emotional distress" to state an IIED claim, but he did not.[51]

---

[46] ECF No. 13 at 11.

[47] *See Sadler v. Pacificare of Nev.*, 340 P.2d 1264, 1267 (Nev. 2014). The defendants also argue, with no analysis or support, that "Nevada's discretionary-function immunity, NRS 41.032(2), shields government employees from liability for decisions regarding whether and how to investigate or prosecute criminal matters." ECF No. 13 at 11. I find this one-sentence argument insufficient to adequately raise a dismissal argument based on discretionary immunity, so I do not consider it.

[48] *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981) (cleaned up).

[49] ECF No. 12 at ¶¶ 86–89.

[50] ECF No. 13 at 10.

[51] *Id.*

I find that Sorget has sufficiently alleged extreme and outrageous conduct. Construed liberally, Sorget contends that the defendants released private information about him with the intent to foment threats and harassment online. That alleged conduct, taken as true for the purposes of this motion, is sufficiently reprehensible to plausibly be considered outside the bounds of human decency.

I also reject the defendants' physical-manifestation argument. The Nevada Supreme Court has definitively concluded that an IIED claim "does not require a physical injury."[52] Nevada instead endorses a sliding-scale approach, stating that "the less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress."[53] So the fact that Sorget did not plead a physical injury is not fatal to his claim. But Sorget failed to allege *any* emotional distress stemming from the defendants' conduct. Though the distress need not be physical, a plaintiff still must allege severe or extreme distress.[54] So I dismiss Sorget's IIED claim with leave to amend that claim to sufficiently plead emotional distress.

---

[52] *Sadler*, 340 P.3d at 1268 (distinguishing an IIED claim, which does not require a physical injury, with a negligent-infliction-of-emotional-distress claim, which does).

[53] *Chowdry v. NLVH, Inc.*, 851 P.2d 459, 483 (Nev. 1993) (quoting *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983)).

[54] *See Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998) (finding plaintiff's testimony that "he was depressed for some time" insufficient to show severe or extreme emotional distress and noting that "he did not seek any medical or psychiatric assistance" and "presented no objectively verifiable indicia of the severity of his emotional distress"); *Ainsworth v. Newmont Min. Corp.*, 381 P.2d 588, at *4 (Nev. 2012) (table disposition) (finding that symptoms like stress, sleeplessness, and loss of appetite "are insufficient to establish severe emotional distress").

**E. Sorget's FOIA claim fails as a matter of law.**

In his eleventh claim for relief, Sorget theorizes that the defendants "failed to properly respond to the federal records request as required by" FOIA.[55] The defendants contend that this claim fails as a matter of law because FOIA applies only to federal agencies, and the defendants are state actors.[56] Sorget responds that FOIA does apply in these circumstances because the defendants used the federal CJIS/NCIC databases, and local agencies who contract with the federal government for access to those databases must agree to "uphold the standards of FOIA."[57]

The FOIA statute defines "agency" as "each authority of the Government of the United States,"[58] which specifically includes "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency[.]"[59] FOIA's private right of action thus "is specifically limited to actions against agencies of the United States Government. The civil remedy provisions of the statute do not apply against private individuals, state agencies, private entities, or state or local officials."[60]

---

[55] ECF No. 12 at ¶ 115.

[56] ECF No. 13 at 9.

[57] ECF No. 16 at 6.

[58] 5 U.S.C. § 551(1).

[59] 5 U.S.C. § 552(f)(1).

[60] *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999) (emphasis omitted) (quoting *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1447 (9th Cir. 1985)); *see also St. Michael's Convalescent Hosp. v. California*, 643 F.2d 1369, 1373 (9th Cir. 1981) (holding that FOIA does not provide a right of action against "state agencies or bodies").

NCSO is a state agency, and McGill and Kunzi are state actors. Because FOIA claims can only be brought against agencies of the federal government, Sorget's FOIA claim fails as a matter of law. The fact that those state agencies used federal databases does not impose FOIA liability where it otherwise cannot exist. The statute makes no exception for state agencies using federal resources; it unambiguously limits the availability of civil remedies for FOIA violations made by federal agencies. So I dismiss Sorget's FOIA claim, but I do so with leave to amend if he can allege true facts to support a similar claim under Nevada's public-records laws.

**F. Sorget doesn't adequately allege facts to support the intent requirements of Nevada's anti-doxxing law.**

Sorget also brings a claim under Nevada's anti-doxxing law, NRS 41.1347.[61] He contends that McGill "disseminated information that was intentionally used to harm" him, which included his "criminal history, name, address, and child-abuse-related case information."[62] The defendants move to dismiss this claim, arguing that Sorget "fails to identify with particularity what 'personal identifying information' or 'sensitive information' was disseminated by [the] [d]efendants themselves, as opposed to by third parties" who are not named as defendants.[63] They also contend that, even if the complaint adequately alleged that McGill accessed and disseminated the information, Sorget does not adequately allege that he did so with "the requisite statutory intent."[64]

---

[61] The parties refer to this law by its bill number, AB296. NRS 41.1347 is the codification of that law.

[62] ECF No. 12 at ¶¶ 122–127.

[63] ECF No. 13 at 11.

[64] *Id.* at 12.

NRS 41.1347 creates civil liability for individuals who disseminate "any personal identifying information or sensitive information . . . with the intent to aid, assist, encourage, facilitate, further, or promote any criminal offense which would be reasonably likely to cause death, bodily injury, or stalking" or "with the intent to cause harm to the person and with knowledge of or reckless disregard for" the fact that release of the information may cause "death, bodily injury, or stalking."[65] A person whose information was disseminated under this statute "may recover damages, reasonable attorney's fees, and costs."[66]

Sorget adequately alleges that the defendants disseminated sensitive information: his "criminal history, name, address, and child-abuse-related case information."[67] He also alleges facts from which one could infer that McGill is the person to have released that information.[68] But I cannot infer from the facts in the complaint that the defendants acted with the requisite intent. So I dismiss this claim with leave to amend if Sorget can allege true facts establishing that the defendants released his information with the intent to cause him harm.

The defendants also invoke the law's supposed exemption for law enforcement to contend that this claim fails as a matter of law. But they appear to be analyzing this claim under a version of the bill that did not ultimately become law. They refer to exemptions for "a law enforcement or correctional activity authorized by law" and "a legitimate public interest."[69] But the codified statute limits its exemptions to the dissemination of information "(a) for the purposes of reporting conduct reasonably believed to be unlawful; (b) which depicts a law

---

[65] Nev. Rev. Stat. § 41.1347(1)(a) (cleaned up).

[66] *Id.* at § 41.1347(2) (cleaned up).

[67] ECF No. 12 at ¶ 125.

[68] *Id.* at ¶¶ 21–25.

[69] ECF No. 13 at 12 (citing AB296, Sec. 6(3)(a), (c)).

enforcement officer acting under the color of law or an elected officer of the State of Nevada or any of its political subdivisions acting in an official capacity; (c) gathered in the exercise of the constitutionally protected rights of freedom of speech and assembly; or (d) which is a good-faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern[.]"[70] None of these codified exemptions appear to apply to Sorget's allegations, so they do not bar his claim.

**G. Sorget is granted leave to amend his complaint as explained in this order.**

To summarize, Sorget's claims under the Voting Rights Act (claim 3), 26 U.S.C. § 7213 (claim 5), 18 U.S.C. § 371 (claim 10), and FOIA (claim 11) are dismissed with prejudice and without leave to amend. He may replace his FOIA claim with one arising under Nevada's public-records law if he can allege true facts to do so. Sorget's "misconduct" claims (6–9 and 12) are dismissed with leave to amend to instead plead negligence claims. Sorget's IIED (claim 4) and doxxing (claim 13) claims are also dismissed with leave to amend. And portions of Sorget's First and Fourteenth Amendment claims (claims 1 and 2) survive dismissal, but Sorget may amend his claims to allege facts that support the insufficiently pled theories identified in this order.

Sorget is cautioned that an amended complaint supersedes the original complaint, so the amended complaint must be complete in itself.[71] Sorget's second amended complaint must therefore contain all claims, defendants, and factual allegations that he wishes to pursue in this

---

[70] Nev. Rev. Stat. §§ 41.1347(3)(a)–(d) (cleaned up).

[71] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).

lawsuit. **In each count**, he must allege true facts sufficient to show what **each** defendant did to be held liable under that claim. He also may **not** add new claims not expressly authorized by this order.

**Conclusion**

IT IS THEREFORE ORDERED that the defendants' motion to dismiss **[ECF No. 13] is GRANTED in part as explained in this order. Sorget must file a second amended complaint consistent with this order by November 30, 2026.** If Sorget fails to file a second amended complaint by that deadline, this case will proceed only on (1) the portion of his First Amendment claim alleging that McGill released Sorget's information and Kunzi denied his public-records request because Sorget engaged in protected activity, and (2) the portion of his equal-protection claim alleging that the defendants intentionally handled his public-records request differently than they would any other person.

U.S. District Judge Jennifer A. Dorsey
November 9, 2026